**Klaus H. Hamm, OSB# 091730**
Email: klaus.hamm@klarquist.com
**Scott E. Davis, OSB# 022883**
Email: scott.davis@klarquist.com
KLARQUIST SPARKMAN, LLP
121 S.W. Salmon St., Ste. 1600
Portland, Oregon 97204
Telephone: (503) 595-5300
Facsimile: (503) 595-5301

*Attorneys for Plaintiffs*
OMNIGEN RESEARCH, LLC
AND PRINCE AGRI PRODUCTS, INC.

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| **OMNIGEN RESEARCH, LLC AND PRINCE AGRI PRODUCTS, INC.,**<br><br>Plaintiffs,<br><br>v.<br><br>**YONGQIANG WANG, YAN ZHENG AND BIOSHEN,**<br><br>Defendants. | Civil Case No.: 6:16-cv-00268<br><br>**COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INTERFERENCE WITH ECONOMIC RELATIONS, TRADE SECRET MISAPPROPRIATION, COPYRIGHT INFRINGEMENT, UNFAIR COMPETITION, AND BREACH OF FIDUCIARY DUTY**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs OmniGen Research, LLC and Prince Agri Products, Inc. (collectively "Plaintiffs"), by and through their undersigned counsel, bring this action against Yongqiang Wang, Yan Zheng, and "Bioshen," which is registered with the State of Oregon as an assumed business name for Zheng and is otherwise an entity of unknown form (collectively "Defendants"), and allege as follows:

**INTRODUCTION**

1.      From 2005 to 2013, Plaintiff OmniGen Research, LLC ("OmniGen Research") employed Defendant Yongqiang Wang as a scientist. Wang reported to Neil Forsberg, who is

COMPLAINT                                                                                                    Page 1

OmniGen Research's co-founder, and at the time was its Vice President and Chief Scientific Officer. In 2013, Wang worked as a consultant for Plaintiff Prince Agri Products, Inc. ("Prince Agri"), which had become OmniGen Research's parent company as of December 20, 2012, with the acquisition of OmniGen Research by Prince Agri.

2.       At the same time Wang worked for OmniGen Research and Prince Agri in Oregon, he breached his contracts with them by secretly creating an OmniGen Research-clone Chinese business based on stolen OmniGen Research and Prince Agri information and the infringement of their rights. That imitation business consists of at least two entities, Defendant Bioshen and the Chinese company Jiangsu Mirigen Biotechnology Development Co., Ltd. ("Mirigen").

3.       Examples of Wang's violations, and the lengths he went to cover them up, abound. On information and belief, while working at OmniGen Research, Wang applied for a Chinese patent that covers a knockoff of an OmniGen product. He tried to hide the application from OmniGen Research and Prince Agri, even though it rightfully belongs to OmniGen Research, by having Defendant Yan Zheng—who is Wang's wife and, on information and belief, does not have a background in biological sciences—listed as an inventor in his place. He likewise appears to have tried to hide Bioshen by listing Zheng as its representative and "Registrant/Owner" with the Oregon Secretary of State; and he appears to have tried to hide Mirigen by having another associate, Wei Zeng (not to be confused with Wang's wife Yan Zheng), listed as the registrant, administrative contact, and technical contact for the Mirigen website.

4.       A little more than a year after quitting OmniGen Research and Prince Agri, Wang published and took credit for OmniGen Research's product, product story and research approach

COMPLAINT                                                                                    Page 2

as his own in a poorly written article for a third-rate overseas scientific journal. He continues to use OmniGen Research information in marketing materials promoting Mirigen and Bioshen. And, in November 2015, he presented an OmniGen Research slide presentation as if it was his own at a large scientific conference in China. Many of the slides in that presentation were nearly exact copies of the OmniGen Research slide presentation, altered only to add the Mirigen logo.

5.      Mirigen and Bioshen market several lines of nutritional specialty products that are knockoffs of OmniGen Research's products.

## NATURE OF THE ACTION

6.      This is a civil action for breach of contract, intentional interference with economic relations, trade secret misappropriation, copyright infringement, unfair competition, and breach of fiduciary duty.

7.      The breach of contract counts relate to Wang's breach of two contracts with OmniGen Research and one contract with Prince Agri. Among other things, Wang has breached written agreements to return and not improperly use OmniGen Research's and Prince Agri's confidential information, to disclose and assign work-related inventions to OmniGen Research, to disclose work-related inventions to Prince Agri, and to not compete with Prince Agri.

8.      The intentional interference with economic relations claims are asserted against Zheng and Bioshen. Zheng and Bioshen intentionally interfered with OmniGen Research's and Prince Agri's economic relations with Wang because, among other things, they intentionally helped Wang breach his promises to assign his work-related patent applications and patents to OmniGen Research and to disclose them to both OmniGen Research and Prince Agri. Zheng and Bioshen intentionally interfered with Prince Agri's economic relations with Wang because,

COMPLAINT                                                                                          Page 3

among other things, they intentionally helped Wang to breach his contract to not compete with Prince Agri.

9.      The trade secret misappropriation count is asserted against Wang. It relates to his theft of trade secrets from OmniGen Research and Prince Agri.

10.     The copyright infringement count is asserted by OmniGen Research against Wang. It relates to his unauthorized copying of OmniGen Research's copyrighted slide presentations.

11.     The unfair competition count arises under the Lanham Act and relates to Wang's and Bioshen's false advertising by, among other things, promoting OmniGen Research's work as their own.

12.     The breach of fiduciary duty count is asserted against Wang and relates to his breach of the fiduciary duty of loyalty to OmniGen Research by hiding a patent application from it and by making unauthorized use of its confidential information.

## PARTIES

13.     OmniGen Research, LLC is an Oregon limited liability company with its principal place of business located at Glenpointe Ctr. East, 3rd Floor, 300 Frank W. Burr Blvd., Ste. 21, Teaneck, New Jersey 07666. OmniGen Research is a subsidiary of Prince Agri Products, Inc.

14.     Prince Agri Products, Inc. is a Delaware corporation with its principal place of business located at Glenpointe Ctr. East, 3rd Floor, 300 Frank W. Burr Blvd., Ste. 21, Teaneck, New Jersey 07666. Prince Agri is a subsidiary of Phibro Animal Health Corporation ("Phibro").

15.     On information and belief, Defendant Yongqiang Wang is a citizen of China, a legal permanent resident of the United States, and a resident of the State of Oregon, having his residence at 6255 SW Chestnut Drive, Corvallis, Oregon 97333.

COMPLAINT                                                                      Page 4

16.     On information and belief, Defendant Yan Zheng is a citizen of China, a legal permanent resident of the United States, and a resident of the State of Oregon, having her residence at 6255 SW Chestnut Drive, Corvallis, Oregon 97333.

17.     On information and belief, Bioshen is an existing entity of unknown form and registered as an assumed business name for Zheng with a principal place of business at 6255 SW Chestnut Drive, Corvallis, Oregon 97333.

## JURISDICTION AND VENUE

18.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a)-(b) and 1367.

19.     This Court has personal jurisdiction over Wang because Wang is a resident of the State of Oregon. Moreover, on information and belief, Wang has breached the contracts at issue in the State of Oregon, misappropriated the trade secrets at issue in the State of Oregon, and infringed the copyrights at issue in the State of Oregon. Wang also has consented to the jurisdiction of this Court in contracts at issue, entered with OmniGen Research.

20.     This Court has personal jurisdiction over Zheng because she is a resident of the State of Oregon. Moreover, on information and belief, Zheng interfered with the economic relations at issue in the State of Oregon.

21.     This Court has personal jurisdiction over Bioshen because it has a principal place of business in the State of Oregon. Moreover, on information and belief, Bioshen has interfered with the economic relations at issue in the State of Oregon.

22.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 and 1400(a).

# BACKGROUND

## I.    <u>THE PARTIES</u>

### A.    <u>OmniGen Research and Prince Agri</u>

23.     In 2002, Forsberg and Steve Puntenney co-founded OmniGen Research when Forsberg was a professor at Oregon State University ("OSU"), and Puntenney was a graduate student in Forsberg's department. It is now a successful agricultural research and development company, operating within larger corporate entities following the sale of OmniGen Research by Forsberg and Puntenney to Prince Agri in December 2012. OmniGen Research has a research laboratory in Corvallis, Oregon and a research farm south of Corvallis.

24.     OmniGen Research's business is based on technology originally developed by Puntenney. Puntenney had determined that the cause of a common disease, called Hemorrhagic Bowel Syndrome, in lactating cows was moldy feed. Puntenney developed feed additives that help counteract this cause, and that have a variety of other beneficial effects, including strengthening and helping to maintain dairy cows' immune system, which in turn helps to prevent diseases, reducing the need for antibiotics, and increasing milk production. Forsberg advanced the technology by among other things identifying mechanisms of action and immunological markers for better understanding it.

25.     OmniGen Research holds numerous patents around the world, including in the U.S. and China. Prince Agri and Phibro have rights to use OmniGen Research's technology. Puntenney's and Forsberg's inventions led to breakthrough and highly successful products for dairy cattle, including OmniGen-AF, OmniGen-WYC and OmniGen-Green, which are developed, made and sold by Prince Agri, and also sold by Phibro. OmniGen Research has determined that its technology would benefit other species, including pigs and poultry.

26.     The OmniGen products have had strong sales in the U.S. and elsewhere. Phibro has recently launched those products in China. Forsberg currently works as a consultant for Phibro, and is assisting with this product launch, including lecturing in China on scientific topics related to the OmniGen products.

**B.**     **Wang and Zheng**

27.     Wang first met Forsberg when Wang was a graduate student at OSU and Forsberg was a professor. Forsberg took Wang under his wing, hiring him to work in his academic research laboratory. When OmniGen Research grew, Forsberg hired Wang in 2005 to work at OmniGen Research. Wang worked at OmniGen Research as Forsberg's right hand man for the next eight years.

28.     Originally from China, Wang and his wife, Zheng, built lives in Corvallis, Oregon. With OmniGen Research as their sponsors, they became legal permanent residents of the U.S. They purchased their house and a rental property in Corvallis.

29.     However, at some point, Wang apparently decided he owed no loyalty to OmniGen Research. So, while continuing to work at OmniGen Research, he shirked his contractual and fiduciary obligations to secretly form two businesses, Bioshen and Mirigen, to compete with OmniGen Research with the help of his wife and associates.

**C.**     **Bioshen and Mirigen**

30.     On or about February 6, 2012, while Wang still worked at OmniGen Research, Bioshen was registered as an assumed business name for a business with the Corporation Division of the Oregon Secretary of State using an electronic registration form bearing Zheng's electronic signature. The registration form listed Zheng as the business's "Registrant/Owner," and Wang's and Zheng's home address as its headquarters.

31.     On or about April 28, 2012, the Bioshen website, www.bioshen.com, was registered, listing Zheng as the registrant but using Wang's email address and cell phone number for contact information.

32.     On or about September 11, 2012, while Wang still worked at OmniGen Research, Mirigen was formed. Mirigen is a Chinese corporation. Mirigen's principal place of business is listed as Block 3, No. 28, Yanfeng Road, Yanqiao Supporting Area, Huisahn Economic Development Zone, Wuxi, China.

33.     On or about October 21, 2012, the Mirigen website, www.mirigen.com, was registered, listing Zeng as the registrant, administrative contact, and technical contact.

34.     Wang has been a co-owner of Mirigen from its inception, according to official Chinese documents.

35.     Wang did not disclose the existence of either Bioshen or Mirigen to OmniGen Research or Prince Agri.

36.     Mirigen's website is mostly in Chinese; a computer translation described Mirigen as "a professional high-tech biological additives research and development, production, sales and service" business focusing on "feed additives." The website listed four products, YQ004, YQ005, YQ006, and YQ007, for aquaculture, cows, pigs, and poultry, respectively. On information and belief, "YQ" stands for Yongqiang, which is Wang's first name.

37.     In November 2015, Bioshen and Mirigen co-sponsored a scientific conference in China, attended by more than 1,000 people from academia, industry and government. Wang appeared on behalf of both companies, and Bioshen promoted itself as "BioShen USA Corporation."

COMPLAINT                                                                                          Page 8

38.     Marketing materials available at the November 2015 conference in China linked Mirigen and Bioshen to each other, and included information about Bioshen USA products called "Keligen" for pigs and poultry that employ "the most advanced modern green agricultural technology from the United States."

## II.    THE PLAINTIFFS' CONTRACTS, CONFIDENTIAL INFORMATION AND COPYRIGHTS

### A.    The Contracts

39.     On or about September 23, 2009, Wang entered into the two contracts currently at issue with OmniGen Research and in 2013 he entered into a contract with Prince Agri.

40.     In the "Confidentiality and NonDisclosure Agreement" with OmniGen Research, Wang agreed, among other things, to strict limitations on his use and disclosure of OmniGen Research trade secrets and proprietary information, and to return all material relating to OmniGen Research upon termination of his employment. A copy of this agreement is attached as Exhibit A.

41.     In the "Employee Invention Agreement" with OmniGen Research, Wang agreed, among other things, to disclose and assign to OmniGen Research all inventions that result from his work at OmniGen Research, that relate to OmniGen Research's business, or that result from using OmniGen Research resources. A copy of this agreement is attached as Exhibit B.

42.     Each of the two above contracts state "I EXPRESSLY CONSENT TO VENUE IN, AND THE PERSONAL JURISDICTION OF, THE STATE AND FEDERAL COURTS LOCATED IN OREGON FOR ANY LAWSUIT ARISING FROM OR RELATING TO THIS AGREEMENT."

43.     On or about February 1, 2013, following the sale of OmniGen Research to Prince Agri in December 2012, Wang abruptly quit OmniGen Research. A week later, Wang agreed to

help OmniGen Research with the ensuing transition by becoming a consultant for Prince Agri. Wang executed a consulting agreement with Prince Agri on or about February 11, 2013 to memorialize his agreement with Prince Agri. Wang subsequently changed his mind about continuing as a consultant and severed his ties permanently with Prince Agri and OmniGen Research.

44.    The "Consulting Agreement" between Wang and Prince Agri has, among things, sections in which Wang promises to maintain the confidentiality of Prince Agri's information, and not make unauthorized use of it, to return all Prince Agri confidential information upon termination of the engagement, to disclose inventions to Prince Agri, and to not compete with Prince Agri during the term of the agreement or for one year following termination or expiration. A copy of this agreement is attached as Exhibit C.

**B.    The Confidential Information and Trade Secrets**

45.    While at OmniGen Research for nearly eight years, Wang had access to its trade secrets and other confidential information. Wang also had access to the trade secrets and other confidential information of Prince Agri.

46.    As a research and development company, OmniGen Research has extensive trade secrets and other confidential information, including about OmniGen Research technology and OmniGen products.

47.    As a product development company, Prince Agri has extensive trade secrets and other confidential information, including about OmniGen Research technology and OmniGen products.

48.    The trade secrets and confidential information of OmniGen Research include OmniGen Research's research and experimentation methods, including its confidential comprehensive approach to testing the effectiveness of feed additives on animal populations.

COMPLAINT                                                                                          Page 10

This approach combines, among other things, dosage amounts, intervals for measuring temporal responses, procedures for blood sampling, procedures for isolating blood cells, and assessment targets.

49.    The trade secrets and confidential information of OmniGen Research and Prince Agri also include information about how to make OmniGen products. Since the original development of OmniGen products, OmniGen Research and Prince Agri have made numerous confidential improvements to OmniGen products, for example relating to processing aids, ingredient sourcing, ingredient mixing procedures, the scientific motivation behind the use of certain ingredients, and precise ratios of ingredients.

50.    The above information has independent economic value, and has gained in value, because it is not generally known to the public or to other persons who can obtain economic value from its disclosure or use, thereby providing economic and competitive advantages to OmniGen Research and Prince Agri.

51.    OmniGen Research and Prince Agri have made significant efforts to maintain the secrecy of the above information. For example, OmniGen Research and Prince Agri require employees with access to the above information to sign confidentiality agreements, such as the ones signed by Wang. OmniGen Research and Prince Agri keep the above information in secure electronic storage systems, and in locked, alarmed facilities not accessible by the public or people outside their organizations.

52.    Efforts by OmniGen Research and Prince Agri to maintain the secrecy of the above information are and have been reasonable under the circumstances.

C.    **Copyright**

53.     A former professor, Forsberg's role at OmniGen Research included lecturing to veterinarians, scientists, customers and potential customers about some of the research and science behind the OmniGen products.

54.     Forsberg developed a core lecture, based on slides. Over the years, he gave variations of it more than 100 times to audiences across the country and internationally.

55.     OmniGen Research owns the copyright for these slides, and has recently obtained Copyright Registration TXu001977244 for one version of them.

56.     In his current role, in January of this year, Forsberg lectured in China as part of the launch of OmniGen products in China.

III.    **WANG'S, ZHENG'S AND BIOSHEN'S ILLEGAL ACTS**

A.    **During OmniGen Research's Employment of Wang**

57.     Following an extended January 2012 trip to China, Wang took concrete, secret steps that went well beyond initial preparatory measures to form his OmniGen-clone Chinese business while he was employed by OmniGen Research.

58.     On or about February 6, 2012, as set out above, Bioshen registered as a business with the State of Oregon. On information and belief, Wang secretly participated in the registration of Bioshen.

59.     That month, Wang also communicated extensively and secretly with Zeng (i.e., Wei Zeng rather than defendant Yan Zheng), who is believed to have lived in New York State at the time. In one email Wang urged Zeng to look at OmniGen Research's and Prince Agri's websites to "find anyway to get your business to start" and to "please let me know your ideas."

COMPLAINT                                                                                      Page 12

60.     On or about March 3, 2012, Zeng sent Wang an email with his mailing address in Setauket, New York, along with the message "Look forward to your docs, and let's roll … rock later …"

61.     Wang sent Zeng documents and a CD, including, on information and belief, confidential OmniGen Research information.

62.     On or about March 6, 2012, Zeng sent Wang another email stating "Got your documents and the CD."

63.     Over the next few weeks, Zeng, Wang and a third person, Liancheng Chen spent hours communicating with each other on video calls and Internet chats.

64.     On or about April 28, 2012, the domain name for the Bioshen website, www.bioshen.com, was registered.

65.     On information and belief, in the spring of 2012 or earlier, Wang began planning and later helped conduct an experiment on the effect of a product very similar or identical to the OmniGen products on poultry, without the knowledge or permission of OmniGen Research or Prince Agri.

66.     On or about September 11, 2012, Mirigen was registered as a business with the Chinese government. Wang had an ownership stake in the Mirigen business, along with Zeng, Chen, among others.

67.     On or about October 21, 2012, the domain name for the Mirigen website, www.mirigen.com, was registered.

68.     On or about October 29, 2012, a Chinese patent application was filed for a "Natural Animal Feed Additive" with ingredients very similar to the OmniGen-WYC product. The application number was 201210420822 ("the '822 Chinese patent application"). The

application lists four inventors but Wang is not one of them. Instead, the listed inventors are Zheng (Wang's wife), Zeng, Chen, and Yu Li.

69.    On information and belief, Wang orchestrated the preparation and filing of the '822 Chinese patent application.

70.    On information and belief, listing Wang's wife as an inventor on the '822 Chinese patent application was a sham. She had no substantive involvement in the application or the claimed subject matter, but Wang listed her because he wanted to ensure that ownership of the application remained in his family while decreasing the possibility that OmniGen Research would learn of his role with respect to the patent application. On information and belief, he also wanted to create a (flawed) argument that OmniGen Research did not have rights to the application under the Employee Invention Agreement.

71.    In November 2012, a few days after the filing of the '822 Chinese patent application, Wang took an extended and unannounced absence from work at OmniGen Research.

72.    In early January, 2013, Wang again took an unannounced trip of about three or four days. Soon after his return, he told Forsberg that he needed to immediately travel to China. Forsberg did not authorize that trip and Wang did not leave at that time, but about ten days later Wang again took an unannounced trip for about three days.

73.    On or about January 23, 2013, the '822 Chinese patent application was published (unbeknownst to OmniGen Research).

74.    On or about February 1, 2013, Wang quit OmniGen Research.

75.    On or about February 7, 2013, Wang agreed to continue on as a consultant for Prince Agri to assist OmniGen Research transition due to his departure.

COMPLAINT                                                                                    Page 14

76.     Then, on or about February 27, 2013, Wang stopped consulting and, it was later discovered, also attempted to erase the contents of his OmniGen Research-owned computer before returning it.

### B.    Activities After Wang Quit Working For OmniGen Research and Prince Agri

77.     On or about July 23, 2013, the Chinese government issued to Mirigen a production license for a feed additive.

78.     On or about August 29, 2013, on information and belief, Wang presented "Effect of dietary supplementation on improvement of growth and immune function of broilers" at The 7th International Medicinal Mushroom Conference in Beijing, China.

79.     On or about September 17, 2013, an article "Effect of dietary supplementation on improvement of growth and immune function of broilers" was submitted for publication in a third-rate journal, *Engineering Sciences.* The article listed Chen, Zeng, Li and Wang as authors. The article described a research study of a dietary supplement product called Mirigen that has nearly identical ingredients to the product OmniGen-WYC. The article described a research approach that is a trade secret and confidential information of OmniGen Research, which includes among other things dosage amounts, intervals for measuring temporal responses, procedures for blood sampling, procedures for isolating blood cells, and assessment targets. On information and belief, the Mirigen product described in the article was created using trade secrets and confidential information of OmniGen Research and Prince Agri, including processing aids, ingredient sourcing, ingredient mixing procedures, the scientific motivation behind the use of certain ingredients, and/or precise ratios of ingredients.

80.     On or about October 30, 2013, a Chinese patent issued from the '822 Chinese patent application. That patent is Chinese patent no. ZL 2012 1 0420822.6 ("the '822.6 Chinese patent").

COMPLAINT                                                                                          Page 15

81.     On or about July 10, 2014, the above-described article "Effect of dietary supplementation on improvement of growth and immune function of broilers" was published in *Engineering Sciences.*

82.     On or about July 14, 2015, outside counsel for OmniGen Research and Prince Agri sent Wang and Zheng a letter stating, among other things, that Wang had breached his contracts with OmniGen Research and Prince Agri, and that he had misappropriated their trade secrets. The letter also demanded, among things, that Wang and Zheng return all confidential documents of OmniGen Research and Prince Agri, that they assign the Chinese patent to OmniGen Research, and that Wang cease from all Mirigen-related activities.

83.     OmniGen Research and Prince Agri did not receive a response to this letter. However, a few days after the letter was sent, the Mirigen website was no longer accessible.

84.     But by November 2015, the Mirigen website was again accessible, although since then most of its content has again been removed.

85.     On or about November 13-15, 2015, Mirigen and Bioshen, along with others, sponsored a conference in China called "The First 'International Animal and Intestinal Ecology and Health in China Summit Forum' (IAIEH)." The conference was held at Hunan Normal University, and attended by more than 1,000 people, including academics, government officials, and business leaders.

86.     At this conference, Wang gave a lecture titled "Effects of immunomodulatory feed additive on the intestinal gene expression and anti-bacteria." The lecture included the presentation of slides, the majority of which were copied from OmniGen Research's copyrighted slide presentations, created by Forsberg, which Wang had access to while at OmniGen Research and which he illegally copied and retained following termination of his engagement with

OmniGen Research and Prince Agri. These slides included data from OmniGen Research studies re-styled as data from studies conducted for Mirigen.

87.     The slides Wang copied and retained included OmniGen Research confidential notes that are visible when the slide presentation is edited and are a part of the electronic slide document, but that are not visible when the slides are presented.

88.     Wang appeared at this conference as the president of Bioshen, and made numerous false statements in promoting Bioshen and Mirigen. For example, Wang represented the material copied from OmniGen Research's copyrighted slides as Mirigen's and Bioshen's, as well the innovations described therein. Bioshen and Mirigen also promoted their affiliation with "Dr. Kevin Marley," whom they touted as a "Professor of Veterinary College" at Oregon State University. This also was false, as Marley is a research assistant and a laboratory manager at Oregon State University, but not a professor.

89.     On information and belief, Wang also provided an electronic version of the slides, which included OmniGen Research confidential notes, to the conference organizers, who then made electronic versions of the slides available to conference participants.

90.     Bioshen and Mirigen also submitted a paper, which falsely describes research, as part of their participation in the conference. The paper describes a study conducted with pigs by Bioshen and Mirigen, when in fact the studies were conducted by OmniGen Research with regard to OmniGen products. The misrepresented studies were on sheep and dairy cattle. In other words, the paper falsely states the feed additive tested and the species involved, not to mention who actually conducted the studies.

## PLAINTIFFS' CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### (Breach of Contract – Yongqiang Wang)

91.     Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth here.

92.     The Confidentiality and Non-Disclosure Agreement (attached as Exhibit A) is a valid and enforceable contract. In consideration of including but not limited to his continued employment by OmniGen Research, Wang promised among other things that he would not use OmniGen Research's "Protected Matters," as that term is defined in the agreement, without authorization or approval, and that he would return and not retain all documents relating to OmniGen Research and/or Protected Matters that he obtained during the course of his employment.

93.     Wang breached paragraph 2 of the Confidentiality and Non-Disclosure Agreement at least by using and disclosing OmniGen Research's Protected Matters in manners that were not authorized and/or approved by OmniGen Research.

94.     Wang breached paragraph 3 of the Confidentiality and Non-Disclosure Agreement at least by not returning all documents relating to OmniGen Research and/or Protected Matters, obtained by Wang during the course of his employment, and also by retaining copies of such documents.

95.     The Employee Invention Agreement (attached as Exhibit B) is a valid and enforceable contract. In consideration of including but not limited to $500, Wang promised among other things to disclose to OmniGen Research every "Invention," as that term is defined in the agreement, resulting from work performed on behalf of OmniGen Research, to assign all right, title and interest to such Inventions, and to assist OmniGen Research in securing such

COMPLAINT                                                                                    Page 18

rights. In the agreement, he also promised to notify OmniGen Research of the details of his employment with any future or prospective employers.

96.    Wang breached paragraph 1 of the Employee Invention Agreement at least by not notifying OmniGen Research of work related to the '822 Chinese patent application, the '822 Chinese patent application, and the resulting '822.6 Chinese patent to OmniGen Research.

97.    Wang breached paragraph 2 of the Employee Invention Agreement at least by not assigning the '822 Chinese patent application and resulting '822.6 Chinese patent to OmniGen Research.

98.    Wang breached paragraph 3 of the Employee Invention Agreement at least by not assisting OmniGen Research to secure its rights in the '822 Chinese patent application and resulting '822.6 Chinese patent.

99.    Wang breached paragraph 5 of the Employee Invention Agreement at least by not notifying OmniGen Research of the details of his employment with Bioshen and Mirigen.

100.    The Consulting Agreement (attached as Exhibit C) is a valid and enforceable contract. In consideration of including but not limited to his engagement as a consultant for Prince Agri, Wang promised among other things that he would not use or disclose Prince Agri's "Confidential Information," as that term is defined in the agreement, without authorization or approval, and that he would return all material containing, embodying or reflecting any Confidential Information. Wang also promised that during the Agreement's term, and for one year after, that he would not compete with Prince Agri's business.

101.    Wang breached paragraph 4 of the Consulting Agreement at least by using and disclosing Prince Agri's Confidential Information in manners that were not authorized or

approved, and also by not returning to Prince Agri all material containing, embodying or reflecting any Confidential Information.

102.    Wang breached paragraph 5 of the Consulting Agreement at least by not informing Prince Agri of the '822 Chinese patent application and resulting '822.6 Chinese patent.

103.    Wang breached paragraph 6 of the Consulting Agreement at least by competing with Prince Agri's business both during the term of the agreement, and in the one-year period after termination or expiration.

104.    OmniGen Research and Prince Agri have been damaged by the above breaches and will continue to be injured by them unless Wang, and all those acting in privity with him, are ordered to return or destroy all materials in their possession, custody or control containing or reflecting Plaintiffs' confidential information, and are ordered to make no further use of them.

<b>SECOND CLAIM FOR RELIEF</b><br>
<b>(Intentional Interference With Economic Relations – Yan Zheng and Bioshen)</b>

105.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth here.

106.    Both OmniGen Research and Prince Agri had a business and professional relationship with Wang, as a result of among other things the aforementioned contracts.

107.    On information and belief, Zheng intentionally interfered with Wang's business and professional relationship with OmniGen Research by among other things assisting Wang with evading his obligation to disclose and assign the '822 Chinese patent application and resulting '822.6 Chinese patent to OmniGen Research.

108.    On information and belief, Zheng provided this assistance through improper means and for an improper purpose by among other things agreeing to be listed as an inventor on

the '822 Chinese patent application in Wang's place even though she was not an inventor of any alleged invention described or claimed therein.

109.    Zheng's actions had the causal effect of damaging Wang's and OmniGen Research's business and professional relationship, and damage to OmniGen Research has resulted. OmniGen Research will continue to be injured by Zheng's action unless she is ordered to assign her entire interest in the '822 Chinese patent application and the '822.6 Chinese patent to OmniGen Research.

110.    On information and belief, Zheng intentionally interfered with Wang's business and professional relationship with Prince Agri by among other things assisting Wang in evading his obligation to not compete with Prince Agri.

111.    On information and belief, Zheng provided this assistance through improper means and for an improper purpose by among other things agreeing to be listed and maintained as the registrant for the competing business Bioshen and as the registrant and contact for Bioshen's website, and to be listed and maintained as an inventor on the '822 Chinese patent application in Wang's place even though she was not an inventor of any alleged invention described or claimed therein.

112.    Zheng's actions had the causal effect of damaging Wang's business and professional relationship with Prince Agri and OmniGen Research, and damage to Prince Agri and OmniGen Research has resulted.

113.    Zheng (through Bioshen) and Bioshen intentionally interfered with Wang's business and professional relationship with Prince Agri by among other things assisting Wang in evading his obligation to not compete with Prince Agri.

114.    Zheng (through Bioshen) and Bioshen provided this assistance through improper means and for an improper purpose by among other things associating with Wang even though Bioshen is a competing business with Prince Agri and OmniGen Research, and they knew or should have known of Wang's obligations to Prince Agri and OmniGen Research.

115.    Zheng's (through Bioshen) and Bioshen's actions had the causal effect of damaging Wang's and Prince Agri's business and professional relationship, and damage to Prince Agri has resulted.

### THIRD CLAIM FOR RELIEF
### (Trade Secret Misappropriation – Yongqiang Wang)

116.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth here.

117.    OmniGen Research's trade secrets include its comprehensive approach to testing the effectiveness of feed additives on animal populations, including among other things dosage amounts, intervals for measuring temporal responses, procedures for blood sampling, procedures for isolating blood cells, and assessment targets.

118.    OmniGen Research's and Prince Agri's trade secrets also include improvements about how to make OmniGen products, including processing aids, ingredient sourcing, ingredient mixing procedures, the scientific motivation behind the use of certain ingredients, and precise ratios of ingredients.

119.    OmniGen Research and Prince Agri employ reasonable measures to maintain the secrecy of these trade secrets.

120.    Wang used improper means to acquire the above information from OmniGen Research because among other things he had contractually agreed not to use OmniGen

COMPLAINT                                                                                    Page 22

Research's information unless authorized or approved by OmniGen Research, yet he used the information without OmniGen Research's authorization or approval.

121.    Wang misappropriated OmniGen Research's trade secrets by acquiring, using and disclosing those trade secrets without authorization and by improper means.

122.    Wang's misappropriation of OmniGen Research's and Prince Agri's trade secrets was willful and malicious, entitling OmniGen Research and Prince Agri to attorney's fees and punitive damages, and has damaged OmniGen Research and Prince Agri. Plaintiffs will continue to be injured by this misappropriation unless Wang, and all those acting in privity with him, are ordered to return or destroy all materials in their possession, custody or control embodying Plaintiff's trade secrets, and are ordered to make no further use of them.

### FOURTH CLAIM FOR RELIEF
### (Copyright Infringement - Yongqiang Wang)

123.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth here.

124.    OmniGen Research owns the copyright and has a valid registration under United States copyright law, Copyright Registration TXu001977244, for original works of authorship in slides discussed above.

125.    Wang has created, induced, and/or authorized copies and/or derivative works of the slides without approval, license or authorization by OmniGen Research.

126.    Wang's actions infringe OmniGen Research's exclusive rights in the slides under 17 U.S.C. § 106.

127.    OmniGen Research has been injured as a result of Wang's copying and will continue to be injured by it unless Wang, and all those acting in privity with him, are ordered to return or destroy all copies of OmniGen Research's copyrighted materials and all copies of any

COMPLAINT                                                                                          Page 23

documents that incorporate such materials, and are ordered to make no further use of any

OmniGen Research copyrighted materials.

### FIFTH CLAIM FOR RELIEF
#### (False Advertising - Yongqiang Wang, Yan Zheng, and Bioshen)

128.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if
fully set forth here.

129.    Wang, Zheng (through Bioshen) and Bioshen have made false and misleading
statements in the promotion of Bioshen and Mirigen, and their products. Those statements
include for example Wang and Bioshen's representation at a scientific conference that slides
based on OmniGen Research's copyrighted slides are the work of Wang, Bioshen and Mirigen,
and reflect their own research and analysis; a paper about research for a scientific conference that
falsely states the feed additive tested, the target animal species, and who conducted the research;
and that Mirigen and Bioshen are affiliated with a "professor" at Oregon State University.

130.    These statements are material at least because they lend credibility to Wang,
Bioshen, and Mirigen, giving them the appearance of relying on original scientific research and
thinking. This additional credibility is material to the purchasing decision of a substantial
segment of consumers.

131.    On information and belief, these false and misleading statements were
intentionally and/or willfully designed to unfairly compete and make sales that otherwise would
not have been made.

132.    These statements were made in commercial advertising or promotion because for
among other reasons they constitute commercial speech, were made by Wang, Zheng (through
Bioshen) and Bioshen in an attempt to unfairly compete with OmniGen Research and Prince

Agri, and were made for the purpose of influencing customers and potential customers to purchase Bioshen's Keligen products and Mirigen's YQ products.

133.    Plaintiffs compete with Bioshen and Mirigen. OmniGen Research's related companies Prince Agri and Phibro have rights to use OmniGen Research's technology and use it for OmniGen products, which are sold around the world, including an ongoing product launch in China.

134.    Bioshen claims to have Keligen products offered as "An honored product of the Bioshen USA Corporation." Promotion of these products rely on the same scientific concepts and boast the same benefits as OmniGen products. Bioshen claims to work closely with Mirigen, which offers YQ products that advertise nearly identical ingredients as in OmniGen-WYC, and promotion of these products rely on the same scientific concepts and boast the same benefits as OmniGen products.

135.    Wang's, Zheng's (through Bioshen) and Bioshen's false advertising affected interstate commerce because, among other things and on information and belief, Bioshen promotes itself as a U.S. company, attendees at the conference included people who do business in the U.S. and who represent companies that do business in the U.S., and people who review and comment on U.S. scientific research.

136.    Plaintiffs have been and are likely to be injured as a result of Wang's, Zheng's (though Bioshen) and Bioshen's false advertising by consumer confusion, loss of goodwill, and increased marketplace barriers.

137.    Plaintiffs will continue to be injured as a result of the false advertising unless Wang, Zheng, and Bioshen are enjoined by this Court from further acts of false advertising and unfair competition.

COMPLAINT                                                                                                                      Page 25

## SIXTH CLAIM FOR RELIEF
### (Breach of Fiduciary Duty - Yongqiang Wang)

138.    Plaintiffs incorporate by reference the allegations in all preceding paragraphs as if fully set forth here.

139.    While an OmniGen Research employee, Wang owed it fiduciary duties, including the fiduciary duty of loyalty. His fiduciary duty of loyalty included the duty to act solely for the benefit of OmniGen Research in all matters connected with his employment.

140.    Wang breached the fiduciary duty he owed to OmniGen Research by, among other things, participating in filing and keeping the '822 Chinese patent application secret from OmniGen Research and taking steps to try to ensure that OmniGen Research would not obtain ownership of the application or any resulting patent, which was for a product to be sold in direct competition with Plaintiffs.

141.    Wang further breached the fiduciary duty he owed to OmniGen Research by, among other things, misappropriating its confidential information.

142.    On information and belief, Wang breached the fiduciary duty he owed to OmniGen Research by, among other things, using its equipment, including a computer owned by OmniGen Research, to set up competing businesses.

143.    Wang breached the fiduciary duty he owed to OmniGen Research by, among other things, using and representing as his own OmniGen Research's research and slide presentation materials, including in the promotion of the competing businesses he helped establish, Mirigen and Bioshen.

144.    Wang's breach of fiduciary duty has damaged and is continuing to damage OmniGen Research. For example, OmniGen Research is not listed as an owner or assignee of the Chinese patent application or the Chinese patent, depriving it of a relevant patent for its Chinese

intellectual property portfolio. As another example, OmniGen Research's parent company Phibro is rolling out OmniGen products at the same time an impostor company is marketing imitation products in direct competition, stymying a legitimate corporate effort to enter a large and growing market. As a third example, Wang's actions may have already created customer confusion in the marketplace about the origin and ownership of OmniGen Research technology, and until Wang is stopped and his actions corrected, they pose a substantial risk of creating more confusion.

## PLAINTIFFS' PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief:

A.      The entry of judgment in favor of Plaintiffs and against Defendants;

B.      An order temporarily, preliminary, and permanently enjoining Wang, Zheng and Bioshen from any involvement with Mirigen, and requiring them to divest any interest in Mirigen.

C.      An order temporarily, preliminary, and permanently enjoining Wang and Zheng, and his or her agents, servants, employees and all persons and entities acting in privity, concert or participation with Wang or Zheng, from retaining or using OmniGen Research or Prince Agri confidential information.

D.      An order requiring Wang and Zheng to provide to OmniGen Research and Prince Agri all copies of any material in either his or her possession, custody or control containing or reflecting OmniGen Research and Prince Agri confidential information or trade secrets.

COMPLAINT                                                                                                   Page 27

E.      An order requiring Wang and Zheng to execute all papers necessary to assign to OmniGen Research any and all interest they have in the '822 Chinese patent application and the resulting '822.6 Chinese patent.

F.      An order temporarily, preliminary, and permanently enjoining Wang and Zheng, and his or her agents, servants, employees and all persons and entities acting in privity, concert or participation with Wang or Zheng, from using any of OmniGen Research's copyrighted materials.

G.      An order temporarily, preliminary, and permanently enjoining Wang, and his agents, servants, employees and all persons and entities acting in privity, concert or participation with him, from falsifying any of their credentials when competing with either Plaintiff.

H.      An order that Wang and Zheng, and his or her agents, servants, employees and all persons and entities acting in privity, concert or participation with Wang or Zheng, report and account to Plaintiffs and the Court as to the whereabouts, publication and distribution of any confidential information belonging to either of the Plaintiffs, and that Wang and Zheng undertake best efforts to return any such confidential information to Plaintiffs.

I.      An order that Wang and Zheng notify all persons to whom either of them provided Plaintiffs' confidential information that such information was misappropriated, may not be used and should be returned to Plaintiffs.

J.      An order that Wang and Zheng report in detail to Plaintiffs and the Court on their efforts undertaken to comply with the Court's Orders.

K.      An award of economic damages in an amount to be determined at trial.

L.    A grant of prejudgment and post judgment interest.

M.    An award of attorney fees pursuant to ORS § 646.467 and other applicable

law.

N.    An award of punitive damages pursuant to ORS § 646.465(3) and Oregon

common law.

O.    Such further relief as the Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs hereby demand a jury trial

on all issues so triable in this action.

DATED February 15, 2016

Respectfully submitted,

By:   *s/Klaus H. Hamm*
      **Klaus H. Hamm, OSB# 091730**
      Email: klaus.hamm@klarquist.com
      **Scott E. Davis, OSB# 022883**
      Email: scott.davis@klarquist.com
      KLARQUIST SPARKMAN, LLP
      121 S.W. Salmon St., Ste. 1600
      Portland, Oregon 97204
      Telephone: (503) 595-5300
      Facsimile: (503) 595-5301

      *Attorneys for Plaintiffs*
      OMNIGEN RESEARCH, LLC
      AND PRINCE AGRI PRODUCTS, INC.