IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**OMNIGEN RESEARCH,** *et al*,

    Plaintiffs,

v.

**YONGQIANG WANG,** *et al*,

    Defendants,

**Civ. No. 6:16-cv-00268-MC**

**OPINION and ORDER**

MCSHANE, Judge:

    Plaintiffs, in their Motion for Terminating Spoliation Sanctions (ECF No. 129), ask this court to grant a default judgment in their favor due to the conduct of the defendants; specifically, the defendants' intentional destruction of evidence. Plaintiffs argue that such an extreme measure is warranted because of the scope of the spoliation and its consequential impact on the plaintiffs' ability to seek a judgement. Because defendants have intentionally hidden or

destroyed evidence to the extent that it severely undermines the Court's ability to render a judgment based on the evidence, and because the conduct of the defendants threatens the "orderly administration of justice." *Leon v. IDC Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006), the Motion is GRANTED.

Defendants' Motions for Summary Judgment (ECF No. 126 and 130), Defendants' Motion for Judgment on the Pleadings (ECF No. 177), and Plaintiffs' Motions for Partial Summary Judgment (ECF No. 119, 120, and 123), are **DENIED** as moot.

## BACKGROUND

This action was filed on 2/15/2016 by plaintiffs OmniGen Research, LLC (OmniGen) and Prince Agri Products, Inc. (Prince Agri) against defendants Dr. Yongqiang Wang, Ms. Yan Zheng, and Bioshen (an Oregon business) for breach of contract, intentional interference with economic relations, trade secret misappropriation, copyright infringement, false advertising and unfair competition under the *Lanham Act*, and breach of fiduciary duty. (ECF No. 1).

OmniGen was co-founded by Neil Forsberg and Steve Puntenney in 2002. They sold the company to Prince Agri in December 2012. Wang first met Forsberg when Wang was a graduate student at Oregon State University (OSU), where Forsberg was a professor. Wang completed his PhD and worked as an assistant professor in Forsberg's research laboratory at OSU until Forsberg hired him to work for OmniGen in 2005.

According to the plaintiffs, while still working at OmniGen in 2012, Wang breached his employment contract by stealing trade secrets and then using them to secretly create two rival businesses, Bioshen in Oregon and Jiangsu Mirigen Biotechnology Development Company

(Mirigen) in China. Both, the plaintiffs claim, market lines of nutritional specialty products that are knockoffs of OmniGen's products. (*Id*).

The defendants brought counterclaims for promissory estoppel and unjust enrichment, naming Forsberg as a third party defendant. (ECF No. 83). The counterclaims are based on the defendants' theory that Wang had helped develop food additive products for dairy cows that OmniGen, Prince Agri, and Forsberg had profited from without fairly compensating Wang for his contributions. (*Id* at pp. 20-24).

This case has been plagued by discovery issues and concerns of spoliation from its inception. Plaintiffs, concerned in part about the possible destruction of evidence early in the case, filed a Motion for Preliminary Injunction on 2/23/2016 asking that Wang, Zheng, and Bioshen "account for the location of all material in its, his or her possession, custody or control… and to provide to Omnigen Research and Prince Agri all originals and all copies (in whatever format they currently exist) of any materials in its, his or her possession, custody or control." They further requested that "Wang and Zheng (including Bioshen) shall immediately produce to Plaintiffs all electronic media in their custody, possession or control for purposes of verifying that they do not contain Plaintiff's confidential and/ or copyrighted material." (ECF No. 12). The motion was granted after a hearing on 5/12/2016 (ECF No. 50).[1]

Eleven days later, the plaintiffs filed a Motion for Order to Show Cause (ECF No. 54) because Mr. Wang had left for China without producing his laptop as required by the Preliminary Injunction. A hearing on the issue was held on 5/24/2016 and, in addition to other requirements, the defendants were ordered to "download all of the contents of the computer in China on a portable hard drive and have it mailed to defense counsel within 7 days, and deliver any computers or portable storage data to defense counsel by 5/27/2016." (ECF No. 60).

---

[1] The Preliminary injunction was later revised on 1/10/2017 after it was appealed to the 9th Circuit. (ECF No. 104).

The Plaintiffs were required to seek court intervention regarding discovery on multiple occasions because of the failure of the defense to adequately respond to Plaintiffs' requests for production. Hearings were held on 2/7/2017 (ECF No. 109; 113), 2/22/2017 (ECF No. 114; 116), and 3/20/2017 (ECF No.146; 160). There were multiple email communications between the court and the parties regarding discovery. Without belaboring the details of every dispute, at each turn the defense would either maintain that no responsive documents existed or they would fail to adequately respond to production requests and court orders.

In addition to other motions not addressed in this Opinion, Plaintiffs filed their Motion for Terminating Spoliation Sanctions (ECF No. 129) on 3/3/2017. Oral arguments on the motion were heard on 4/18/2017 (ECF No. 179 and 180) and the matter is now before this court.

## STANDARD OF REVIEW

Default Judgment and terminating sanctions for the spoliation of evidence is warranted in instances wherein a party has intentionally hidden or destroyed evidence to the extent it severely undermines the Court's ability to render a judgment based on the evidence and threatens the "orderly administration of justice." *Leon v. IDC Sys. Corp.*, 464 F.3d 951, 958 (9th Cir. 2006).

This Court may remedy the spoliation of evidence with terminating sanctions under: (1) FRCP Rule 37(b)(2), which permits the Court to sanction a party for disobeying a discovery order; (2) the Court's inherent authority to sanction abusive litigation practices; and (3) FRCP Rule 37(e), which permits the Court to sanction a party for the spoliation of electronic evidence. Each of these three authorities have different requirements, although courts often follow the same analysis when considering terminating sanctions under Rule 37(b)(2) and the Court's inherent power.

FRCP Rule 37(b)(2) states that terminating sanctions—an order "dismissing the action" or "rendering a default judgment against the disobedient party"—may be imposed when a party "fails to obey an order to provide or permit discovery." The rule's definition of "order" is broad. *Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011). The Court has inherent power to impose terminating sanctions "when a party has engaged deliberately in deceptive practices that undermine the integrity of judicial proceedings" because this power permits dismissal "when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Leon*, 464 F.3d at 958.

A terminating sanction for spoliation under these authorities requires "a finding of willfulness, fault, or bad faith." *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091 (9th Cir. 2007) (Rule 37(b)(2)). A party's destruction of evidence qualifies as willful if the party has "some notice that the documents were potentially relevant to the litigation before they were destroyed." *Leon*, 464 F.3d at 959.

There are five factors relevant for considering imposing terminating sanctions: "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Connecticut General Life Ins. Co.*, 482 F.3d at 1096. These factors are not a "mechanical" test, and are "not a set of conditions precedent for sanction or a script that the district court must follow." *Id.* A District Court is not required to make explicit findings regarding each of the factors, and "it is not always necessary for the court to impose less serious sanctions first, or to give any explicit warning." *Valley Engineers Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998); *Leon*, 464 F.3d at 958.

Instead, "the most critical factor is not merely delay or docket management concerns, but truth," and thus the most critical issue for the court to determine is "whether the discovery violations threaten to interfere with the rightful decision of the case." *Connecticut General Life Ins. Co.*, 482 F.3d at 1096.

FRCP Rule 37(e) applies when "electronically stored information" that should have been preserved "is lost" and "cannot be restored or replaced through additional discovery." Terminating sanctions are available under this rule only when the party who lost the information "acted with the intent to deprive another party of the information's use in the litigation." A finding of intent, however, eliminates the requirement that the opposing party be prejudiced by the spoliation. Upon a finding of intent, Rule 37(e)(2) permits the adverse inference "that the lost information was unfavorable." In the Advisory Committee Notes to FRCP 37(e) notes, when intent is found, the rule "does not include a requirement that the court find prejudice to the party deprived of the information," it "does not require any further finding of prejudice," and it "does not place a burden of proving or disproving prejudice on one party or the other." (*See* FRCP 37(e) Advisory Committee Notes 2010 and 2015.) This is logical because "once spoliation is shown, the burden of proof logically shifts to the guilty party to show that no prejudice resulted from the spoliation because that party is in a much better position to show what was destroyed and should not be able to benefit from its wrongdoing." *Sec. Alarm Fin. Enterprises, L.P. v. Alarm Prot. Tech., LLC*, No. 3:13-CV-00102-SLG, 2016 WL 7115911, at *6 (D. Alaska Dec. 6, 2016).

The applicable standard of proof for spoliation motions in the Ninth Circuit is the preponderance of evidence. *See, e.g., Compass Bank v. Morris Cerullo World Evangelism*, 104

F. Supp. 3d 1040, 1052–53 (S.D. Cal. 2015); *LaJocies v. City of N. Las Vegas*, No. 2:08-CV-00606-GMN, 2011 WL 1630331, at *1 (D. Nev. Apr. 28, 2011).

## DISCUSSION

As stated during oral arguments on 4/18/2017, the Court finds the destruction of evidence by the defendants was intentional (ECF No. 180 at p.15). The plaintiffs' Motion for Terminating Spoliation Sanctions (ECF No. 129) describes in full detail the many ways the defendants intentionally hid or destroyed evidence in this case. In summary, Plaintiffs allege that the defendants made their desktop computer unavailable by "donating" it to Goodwill, that the defendants intentionally deleted thousands of documents from Wang's personal Lenovo computer, that the defendants intentionally deleted and refused to produce relevant emails from multiple email accounts, and that the defendants intentionally destroyed metadata. These actions have deprived the Plaintiffs of evidence central to their case and undermined the Court's ability to enter a judgment based on the evidence. For these reasons, default judgment and terminating sanctions for the spoliation of evidence is warranted FRCP 37(b)(2), Rule 37(e), and the Court's inherent authority to sanction abusive litigation practices.

Deletion of Wang's Computer Files:

On July 14, 2015, the plaintiffs sent the defendants a cease & desist letter, asserting that Wang breached his contract with plaintiffs and misappropriated their trade secrets, and that Zheng assisted. (ECF No. 136-1). In this letter, the plaintiffs demanded access to "all documents and electronically stored information available to Mr. Wang or Ms. Zheng related to Mirigen or its affiliates." (*Id* at p 3).

A week later on July 22, 2015, Wang intentionally deleted over 200 files from his Lenovo laptop, at least 44 of which were not recoverable. (ECF No. 136-37 at p.19). While it is certainly possible that some of the deleted files were of no consequence, within them were the names of documents that are most certainly relevant to this litigation. These include: "Table 301: Mirigen client user report.docx," and "Table 305: Collaboration agreement on Mirigen cultivation experiment.docx." (*Id* at p. 34.). Because these deleted files are unrecoverable, we will never know their contents, but it is clear from their titles that they were the very documents that plaintiffs were seeking access to. This act by the defendants constitutes intentional spoliation of electronic evidence under FRCP Rule 37(e).

When the defendants did not respond to the plaintiffs' letters, the plaintiffs filed suit on 2/15/2016 (ECF No. 1). Defendants were served on 2/17/2016 (ECF Nos. 5-10). When Mr. Wang was served, according to the process server Douglas Biegel, Mr. Wang initially denied his identity and refused to accept service until Mr. Biegel told Mr. Wang that he had a photograph of him that was identical to his likeness. (ECF No. 5 at p.2 ¶5).

On 2/23/2016, the plaintiffs filed a Motion for Preliminary Injunction (ECF No. 12), which was granted on 5/12/2016 (ECF Nos. 49; 50; 53). The Preliminary Injunction ordered the defendants to "immediately produce to Plaintiffs all electronic media in their custody, possession or control." (ECF No. 50). Two days after filing their Motion for Preliminary Injunction, the plaintiffs sent the defendants a preservation letter instructing the defendants not to destroy any documents (ECF No. 136-3). The letter specifically states that, "Intentionally destroying, or suggesting that anyone else destroy, anything that is relevant to the case against you could result in serious sanctions and penalties being imposed on you by the Court. Those sanctions could include the Court entering a default judgment against you." (*Id* at p.2). Mr. Wang admitted

receiving the letter (ECF No. 136-4 at p.5). Mrs. Zheng also admitted during her deposition that she "of course" understood that she was not supposed to "throw away" or "delete" any documents "related to this case." (ECF No. 136-5 at pp.9-10).

On 5/17/2016, five days after the Preliminary Injunction had been granted, the Plaintiffs sent the defendants a second Preservation Letter reminding them of the court's Order and their obligation to preserve and produce evidence (ECF No. 136-8). This letter was sent after the plaintiffs learned that Mr. Wang had left for China the day before, taking his Lenovo laptop with him in defiance of the court's Order (*Id*). When the Court learned of this issue, it was sympathetic to the argument that Mr. Wang's laptop was necessary for his work in China. At the 5/24/2016 hearing, even though Wang's conduct was a violation of the Preliminary Injunction order, the court denied the Plaintiff's Motion for Order to Show Cause (ECF No. 54), instead ordering Wang to "download all of the contents of the computer in China on a portable hard drive and have it mailed to defense counsel within 7 days." (ECF No. 60). However, this was not done, because according to the defendants:

*When he [Wang] attempted to ship it [the contents of his laptop on an external hard drive] out of China, he discovered that such shipments are prohibited by the Chinese government. He then transferred the contents of his laptop to zip drives and e-mail attachments and sent them to Oregon electronically. Those that were received were conveyed to plaintiffs. We have no way of knowing at this time whether any of the electronic communications were intercepted or withheld by the Chinese government.* (ECF No. 73 at p.2).

The plaintiffs did not receive the actual computer for inspection until 6/16/2016 (ECF No. 129 at p.11). When they had it inspected, they found that over 4,000 files had been deleted after this court issued its *second* Order for production on 5/24/2016. (ECF Nos. 129 at pp.20-21; 136-37 at p.23). Of the thousands of deleted files, the plaintiffs were able to recover most of them, but around 53 files were found to be totally unrecoverable. (ECF No. 136-37 at pp.18-23).

Of the unrecoverable files, it is clear that many of them would have been relevant to this case based on their file path titles which included[2]: "Mirigen product introduction.pptx," "Yongqiang Wang's product introduction ppt\(full English version) Mirigen training 10-17-2013.pptx," "Yongqiang Wang's product introduction ppt\Mirigen training-chicken special-2014-12-04-Xiaodong Zhang supplemented.pptx.," "Chinese version.ppt," and "6-6 Jiangsu Mirigen Biotechnology Development Co.,Ltd.docx." (ECF No. 123 at pp.35-36; 129 at p.22; 136-37 at p.35).

During Wang's deposition on 6/21/2016, he acknowledge deleting some files and documents from his computer earlier that month before submitting it to the plaintiffs for inspection, but he could not remember specifically what he deleted because it was "very hectic" at the time. (ECF No. 136-26 at p.13).

The court finds that the defendants' intentional deletion of these files is intentional spoliation of electronic evidence under FRCP Rule 37(e) and a failure to obey previous court orders under FRCP Rule 37(b)(2).

Deletion of Zheng's emails on her iPad:

The most blatant instance of spoliation of evidence by the defendants is the deletion of emails on defendant Zheng's iPad. When Zheng produced her iPad to the plaintiffs for inspection, they initially inspected it on 9/8/2016 in "airplane mode" (while the device was not connected to the internet, so it was not being synched to receive updates). (ECF No. 136 at p.5; 129 at p.23). This initial inspection showed emails previously downloaded from Zheng's email

---

[2] There are dozens of additional relevant files which were deleted that are not listed here for sake of brevity, but which are detailed in Plaintiff's brief (ECF No. 129 at pp.20-22).

account (zhengyan1975@yahoo.com) to the iPad, but any attachments within the emails could not be accessed without first connecting to the internet. (*Id*).

When the iPad was connected to the internet, the emails which had previously been viewable disappeared (*Id; 136-29; 136-31*), meaning they had been deleted since the iPad was last connected to the internet on 9/5/2016 (ECF No.136-28). One of the deleted emails that certainly would have been relevant to this case was dated 10/18/2015 and was from Zheng to Wang, and included an attachment document labeled "feed additive.docx" (ECF No. 136-28).

Based on irrefutable evidence well outlined in plaintiffs' brief (ECF No. 129 at pp.22-25) and exhibits, it is clear that the defendants deleted emails from Zheng's email account on her iPad sometime between 9/5/2016 (the date the email account was last updated on the iPad) and 9/8/2016 (the date the plaintiffs connected the iPad to the internet and the email account was updated and refreshed). The court finds that the defendants' deletion of these emails is intentional spoliation of electronic evidence under FRCP Rule 37(e) and a failure to obey previous court orders under FRCP Rule 37(b)(2).

Mirigen documents and emails:

Defendant Wang's level of involvement in the 2012 formation of the Chinese company "Mirigren Biotechnology Development Co., Ltd." (Mirigen) has been murky at best. According to Wang during his deposition, his only involvement with Mirigen was as its *un*paid "Chief Scientist" (ECF No. 136-26 at p.6). He has further stated that he has "not had any connection with the company named Mirigen for approximately two years because it ceased operations in 2015." (ECF No. 148 at ¶ 13).

Yet this is contradicted by previous statements Wang himself has made. On 9/7/2016, in response to one of the plaintiffs' interrogatories, he stated "When Mirigen began operations in 2015 I acted as technical consultant until June 2016." (ECF No. 136-20 at p.6). And in June 2016 during his deposition, Wang testified that "I still have a lot of connection" with Mirigen (ECF No. 162-3 at 50:14-15) and that he owned 49% of the company (*Id* at 24:13-24). The Plaintiffs were also able to recover data fragments revealing extensive communication between Wang (using his Lenovo computer) and his Mirigen co-investors. (ECF Nos. 18, 18-1, 18-2, 18-3, 18-4.) The plaintiffs also discovered that in 2014 Wang published an article describing a study "of a dietary supplement (MirigenTM)…as a new generation alternative to antibiotics," using OmniGen's experimental approach, which describes Mirigen as having nearly identical ingredients to an OmniGen product called OmniGen-WYC. (ECF No. 136-2).

Defendant Wang has maintained throughout the litigation that he did not have a Mirigen email account (wangyongqiang@mirigen.com). Wang claims that he only created this account to "transmit a large cache of documents that plaintiffs had requested relating to Mirigen." (ECF No. 147 at p.5; 148 at ¶ 14). If true, Wang is somewhat prophetic given the fact that the email account was created before plaintiffs had served him with their first set of discovery requests on 6/13/2016. It is also clear that Wang had other email accounts he could have used to transmit the documents (ECF No. 161 at pp.16-18). There is simply not enough evidence on the record for this court to determine if Wang's claims regarding the use of his Mirigen email account is true or not.

However, based on the record, it is clear that Wang's involvement with Mirigen was (and perhaps still is) quite extensive. The plaintiffs briefs and exhibits in support of this motion (ECF No. 129; 136; and 161-163) provide extensive evidence connecting Wang to Mirigen showing

numerous instances in which Wang has tried to hide his involvement. For the purposes of this Opinion, it is sufficient to say (as this Court previously stated on 2/22/2017) the evidence "indicate[s] that Mr. Wang and Mirigen are almost one and the same." (ECF No. 116 at p.22). It is also clear from the record that defendant Zheng had involvement with Mirigen's business operations. For example, during her deposition, Zheng admitted that she filed the Chinese patent application with Wang's Mirigen co-investors. (ECF No. 83 at ¶ 68).

The Court finds that the defendants' deletion of emails and computer files showing their involvement with Mirigen is intentional spoliation of electronic evidence under FRCP Rule 37(e) and a failure to obey previous court orders under FRCP Rule 37(b)(2).

Bioshen:

Defendant Wang has always claimed that he has had no involvement with Bioshen other than in its creation. Wang claims that he formed Bioshen "so that his wife [defendant Zheng] could engage in her profession as a statistician." (ECF No. 147 at p.2; 136-26 at p.8).

This representation is not supported by the evidence that Wang sought to destroy. During the inspection of his Lenovo computer, the defendants discovered a deleted resume which shows that Wang purported to be Bioshen's "Technical Director" from 2013 to the present. (ECF No. 136-27; 136-37). And at conference in China in 2015, Wang appeared as Bioshen's "CEO" (ECF No. 17-14 at p.8; 136-26 at p.8).

It is clear that Wang had more involvement with Bioshen than he claims. What is unclear is to what extent Bioshen misappropriated any of the plaintiffs' trade secrets or other confidential information, and to what extent any illegal use damaged the plaintiffs.

Employee Invention Agreement Metadata[3]:

Wang's counterclaims and affirmative defenses allege that he was tricked by the plaintiffs into signing an Employee Invention Agreement than was different from the one Omnigen had given him to review. (ECF No. 83 at p.22). He maintains that the agreement he was given to sign was much more restrictive in scope than the agreement he was given to review with respect to his use of work product and research. He initially claimed that he had received the old agreement "a few days" before he signed a the new one (ECF No. 80 at ¶ 12), but more recently has changed his account and now claims that he received it "months" before he signing the new one (ECF No. 119). The plaintiffs deny that there were multiple versions of the employment agreement and they deny that they surreptitiously "switched" documents when it came time for Wang to sign. (ECF No.97 at p.2).

Setting aside the issue of when Wang reviewed the agreement, there is a more serious concern with his assertion. On July 13, 2016, Wang's counsel testified that Wang had informed him that he had saved a version of the old agreement on his computer (ECF No. 80 ¶ 12). However, when Wang produced his Lenovo computer for inspection, the document and its metadata were not on it. (ECF No. 129 at p.15). On 8/1/2016, Wang's counsel tried to explain (via an email to plaintiffs' counsel) why the document was missing by claiming that "after Mr. Wang was served with the summons and complaint he scanned through documents that he had saved in his laptop and transferred them to a file entitled 'court.'" (ECF No. 136-16 at p.2). When the plaintiffs requested to see this "file" (which should have already been produced under the court's previous Orders), defendant's counsel further explained (via email on 8/17/2016) that, "The documents in the file entitled 'court' were actually saved to an external drive which Mr. Wang has with him in China and which he will bring with him when he returns." (ECF No. 136-

---

[3] "Metadata" shows the time and date when a document was created and last modified.

17 at p.2). But when the defendants finally produced the external thumb drive to Plaintiffs on 9/7/2016 (ECF No.136-15), the metadata for the old agreement Wang purports to have relied on (ECF No. 136-18) shows the file was last modified on March 23, 2016. In other words, the file was modified *after* this litigation commenced. (*Id* at p.5).

This begs the obvious question: Why would Mr. Wang intentionally delete the original file containing the metadata for the one document *most important* to his defense and counterclaims, especially after knowing that he had been ordered to produce it (multiple times)? The plaintiffs asked Wang about this during his deposition on 12/15/2016 (ECF No. 136-19 at pp.4-5):

Q. Why isn't it on the Lenovo computer anymore?

A. Because I save it in a thumb drive.

Q. You can save a copy of a file without deleting it from its source, you know that; right?

A. I know that, but I save it because --

Q. But why did you remove that document from your Lenovo computer?

A. I don't remember.

Q. You don't remember why you did that?

A. Okay. I tell you why. Why -- in my computer, I put every files related to this case....
-- just kind of -- not copy, I paste. I just like hold it and move it to the new folder. And under this new folder, I just save it to thumb drive. You understand me?

Q. I hear what you're saying, but I'm at a loss why you would do it that way instead of making a copy.

A. That's my way.

Q. Okay. But you're destroying evidence when you do that, do you know that?

A. Yes.

Wang's explanation of why he deleted the file instead of copying it makes no sense. First, he admits that he knew that doing so would be destroying evidence in violation of the court's Orders. (*Id*). Second, knowing that the plaintiffs were denying that the document ever existed, why would he entrust the only copy of the most important document in his case to a thumb drive rather than saving it in *multiple* locations, including the original location which would show the originating metadata to bolster his claim that it existed? Third, the file format for the version Wang produced casts doubt on his explanation that he received a different (old) version of the agreement before he signed the "new" one on July 15, 2009. This is because the version Wang eventually produced was in the *newer* Microsoft Word ".docx" format (ECF No. 136-18 at p.5), whereas the version of the one he signed was in the *older* ".doc" format (ECF No. 88-1). In other words, if Wang's story were true, *both* versions should have been in the older ".doc" format, since we know the July 15, 2009 version that he signed was in the ".doc" format.

The most logical explanation is that the old Agreement never existed until Wang created it (as the plaintiffs claim). But that is now also impossible to prove because by intentionally deleting the original file, the originating metadata showing the date when the file was created is gone. Regardless, the court finds that the defendants' intentional deletion of this metadata is intentional spoliation of electronic evidence under FRCP Rule 37(e) and a failure to obey previous court orders under FRCP Rule 37(b)(2).

Second Thumb Drive:

The defendants assert that Mr. Wang copied the contents of his Lenovo laptop relevant to this action on to two thumb drives in case one got lost in transit, and that he only deleted the second drive after learning that the first one had been received by the plaintiffs. (ECF No. 147 at

p.5). Although the plaintiffs assert that the second drive may have contained additional data relevant to their case (ECF No. 129 at pp.17-19), the Court is willing to take the defendants' explanation at face value and finds no basis to sanction the defendants for deleting the second thumb drive.

HP Desktop Computer:

It is undisputed that the defendants possessed a HP desktop computer that they purchased in 2007 (ECF No. 136-20 at p.4; 136-38 at p.4), and which was initially kept in the family's living room (ECF N. 136-5 at p.15). Despite the two preservation letters sent on 2/25/2016 and 5/17/2016, as well as the court's 5/12/2016 preliminary injunction, Mrs. Zheng donated this computer to Goodwill on 5/21/2016 (ECF No. 136-10).

The defendants admit that the their disposal of the HP desktop was a "technical violation" of the preliminary injunction order (ECF No. 147 at p.4), but that it was of no consequence because the computer was only "purchased…for our son to use" (ECF No. 148 at p.3) and that it did not contain any relevant materials (*Id*; ECF No. 147 at p.4). The defendants maintain that the timing of its disposal via donation to Goodwill was just a coincidence. (ECF No. 136-5 at p.14).

The defendants explanation would make sense but for the fact that their son was born June 20, 2004 (ECF No. 136-5 at p.7). This would mean he was three years old when they bought the computer in 2007. It is inconceivable that a toddler would need a desktop computer. It is unbelievable that this computer was not used by Wang or Zheng for purposes relevant to this litigation, especially considering that Wang did not acquire another computer for his own use until he purchased his Lenovo in 2013 (ECF No. 136-20 at p.3).

A far more likely scenario is that this computer was used by Wang between 2007 and 2013 and that it did contain information relevant to this litigation, the loss of which is prejudicial to the plaintiff's case and for which sanctions are appropriate under FRCP Rule 37(b)(2) and the Court's inherent authority to sanction abusive litigation practices.

Defendants' Additional Arguments:

The defendants have argued that most, if not all of the destroyed evidence was not relevant to the case. (ECF No. 180 at p.14). However, when destroyed documents no longer exist, the responsible party may not "assert any presumption of irrelevance as to the destroyed documents." *Leon*, 464 F.3d at 959. The defendant's argument as to the relevance of any destroyed evidence fails.

The defendants have also suggested on multiple occasions that their understanding of the English language may have been the cause of the problems and that their actions, as a result, were unintentional. (ECF No. 160 at pp.4-5; 180 at p.13). As discussed during oral arguments, I find this argument to be disingenuous (see discussion on pp. 13-14 of ECF No. 180). Mr. Wang has lived and worked in the US for many years, earned his PhD and worked at an American university. He incorporated a business in Oregon. All of these activities are indicative of someone having a broad grasp the English language. Regardless, as the Court stated on the record, "…you can say I [defendants' attorney] don't think he understands English quite a bit, but he [Mr. Wang] certainly understands how to destroy evidence." (*Id*).

# CONCLUSION

As discussed here and during oral arguments on 4/18/20 (ECF No. 180), the Court finds that all the required elements for spoliation are met under the required preponderance of evidence standard based on the extensive evidence presented by the plaintiffs.

For these reasons and those stated on the record during oral arguments (*Id*), pursuant to FRCP Rule 37(b)(2), FRCP Rule 37(e), and this Court's inherent authority to sanction abusive litigation practices, the Plaintiffs' Motion for Terminating Spoliation Sanctions (ECF No. 129) is **GRANTED**. The Court will issue an Order of Default Judgment in favor of the Plaintiffs, and the Defendants' counterclaims are dismissed. Defendants' Motions for Summary Judgment (ECF No. 126 and 130), Defendants' Motion for Judgment on the Pleadings (ECF No. 177), and Plaintiffs' Motions for Partial Summary Judgment (ECF No. 119, 120, and 123), are all **DENIED** as moot. A further hearing regarding damages will be set by the Court.

IT IS SO ORDERED.

DATED this 23rd day of May, 2017.

_____
Michael J. McShane
United States District Judge